Naomi Spector (SBN 222573)
Email: nspector@kamberlaw.com
KAMBERLAW, LLP
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364

*Counsel for Plaintiffs Nathan Barton,*
*Cynthia Fahrnkopf, and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NATHAN BARTON and CYNTHIA FAHRNKOPF, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>Defendant. | **CASE NO.:** \_\_'25CV2833 JES  JLB_____<br><br>**CLASS ACTION COMPLAINT FOR**:<br><br>1.  UNFAIR AND UNLAWFUL BUSINESS ACTS AND PRACTICES (CAL. BUS & PROF. CODE §17200 ET SEQ.);<br>2.  DECEPTIVE ADVERTISING PRACTICES (CAL. BUS & PROF. CODE §§ 17500, ET SEQ.); AND<br>3.  CONSUMER LEGAL REMEDIES ACT (CAL. CIV. CODE § 1750, ET SEQ.).<br><br>**"DEMAND FOR JURY TRIAL"** |

Plaintiffs Nathan Barton and Cynthia Fahrnkopf, on behalf of themselves and others similarly situated in California, by and through their undersigned counsel, hereby file this Class Action Complaint and state as follows based on investigation and information and belief:

---

CLASS ACTION COMPLAINT

## I.   INTRODUCTION

1.   It is a longstanding principle of California consumer protection law that product labeling should be truthful and not misleading in order to facilitate informed purchasing decisions.

2.   Defendant Colgate-Palmolive Company ("Defendant") makes misleading and deceptive statements on the boxes and tubes of its hello kids toothpaste (collectively, the "Products") in order to appeal to children and their caregivers, and to increase sales of the Products.[1]

3.   The front label of Defendant's kids fluoride toothpaste states that it is for "kids ages 2+" and the front label of Defendant's fluoride free toothpaste states that it is for "kids all ages".

4.   Defendant intentionally labels and flavors the Products to appeal to children and their caregivers, including by using names and flavors such as unicorn sparkle (bubble gum flavor), smiling shark (fruit punch flavor), magical mermaid (orange dreamsicle flavor), and dragon dazzle (blue raspberry flavor).

5.   The vibrant box imagery, including colorful backgrounds featuring rainbows, strawberries, and watermelons, and images of unicorns, sharks, mermaids and dragons, is also intentionally designed to appeal to children and their caregivers.

6.   In addition, on the front box label of the Products, Defendant touts their efficacy ("prevents cavities/ polishes + brightens / tastes awesome") and the absence of any undesirable ingredients or elements ("no: artificial sweeteners/dyes/artificial flavors/preservatives/parabens/SLS"). These statements are reinforced by the back and side box labels.

---

[1] The definition of "Products" includes all toothpastes manufactured, marketed and labeled by Defendant for "kids ages 2+" and "kids all ages", including but not limited to the dragon dazzle, fresh watermelon, magical mermaid, smiling shark, unicorn sparkle and wild strawberry varieties.

2

CLASS ACTION COMPLAINT

7.     Defendant's label Representations, as depicted and defined below, are likely to lead reasonable consumers of Defendant's Products to believe that they are purchasing a premium toothpaste that is designed and safe for use by children, including because it is free from potentially harmful elements and ingredients.

8.     The label Representations are misleading and deceptive because the Products contain a substantial amount of lead, which Defendant fails to disclose.

9.     According to independent laboratory testing commissioned by Plaintiffs' counsel, all flavors of the Products contain a substantial amount of lead.

10.    The amount of lead in the Products far exceeds any amount that would be considered safe for children; indeed, many pediatricians and toxicologists agree that no level of lead exposure is safe for children.

11.    The amount of lead in the Products far exceeds the limit set by the FDA in guidance on the maximum amount of lead that can be present in candy that is likely to be consumed frequently by small children.[2]

12.    The amount of lead in the Products also far exceeds the levels set by FDA in guidance on the maximum action levels of lead to determine adulteration of food for babies and young children.[3]

13.    To be clear, this action is brought pursuant to California consumer protection law and is not based on any FDA regulation or guidance. The lead limits, however, demonstrate that the Products contain a substantial, material and potentially detrimental amount of lead.

---

[2] *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-lead-candy-likely-be-consumed-frequently-small-children (establishing a recommended maximum lead level of .1 parts per million ("ppm"), or 100 parts per billion ("ppb"), in candy likely to be consumed frequently by small children).

[3] *See* https://www.fda.gov/media/164684/download (establishing maximum action levels of lead in food for babies and young children at 10 ppb and 20 ppb, depending on food category).

3

CLASS ACTION COMPLAINT

14.    The amount of lead in the Products is particularly concerning because, above and beyond exposure through ingestion, lead that is absorbed through the tissue in the mouth and gums is not filtered or eliminated by ingestion and metabolic function. Instead, it can be absorbed directly into the bloodstream.

15.    Furthermore, children frequently ingest toothpaste and use more than the recommended amount—a fact that is exacerbated by the candy and fruit flavoring used by Defendant.

16.    Consumers, including Plaintiffs, do not want to purchase a children's toothpaste containing lead.

17.    Importantly, there are numerous other children's toothpastes available to consumers that, according to independent testing commissioned by Plaintiffs' counsel, contain an insubstantial or undetectable amount of lead.

18.    Plaintiffs and Class members have suffered economic injury based on their purchase of the Products, which they would not have purchased had they known the truth.

## II.    JURISDICTION AND VENUE

19.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

20.    This Court has personal jurisdiction over Defendant because Defendant's contacts with the forum are continuous and substantial, and Defendant intentionally availed itself of the markets within California through the sale and distribution of the Products in California and through the privilege of conducting business in California.

21.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of

4

CLASS ACTION COMPLAINT

California. Moreover, a substantial part of the events and conduct giving rise to the claims alleged herein occurred in this district. *See also* Declarations of Nathan Barton and Cynthia Fahrnkopf Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Exhibits A and B.

## III. FACTUAL ALLEGATIONS

### A. Defendant Labels the Products to Appeal to Children and their Caregivers

22. The following are images of some of the flavors of Defendant's Products, including Unicorn Sparkle, Smiling Shark and Dragon Dazzle.



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT



CLASS ACTION COMPLAINT

 

23.     Defendant purposefully labels the Products to appeal to children, including by prominently using the following images and features on the Product labels (collectively, the "Kids' Representations"):

- The front and back labels of the Products display bright, colorful images and patterns;
- The front and back labels feature "animal" and fruit imagery, such as unicorns, sharks, mermaids, dragons, strawberries and watermelon;
- The flavors of the Products are prominently represented and mimic candy and fruit flavors, including bubble gum, blue raspberry, wild strawberry, fresh watermelon, orange dreamsicle, and fruit punch;
- The side panels of the boxes feature vignettes that are designed to appeal to children, including, for example on the unicorn sparkle toothpaste, the statement: "**dreams do come true** say hello to brush time magic, unicorn sparkle toothpaste tastes like rainbows and sunshine and works brilliantly"; and on the dragon dazzle toothpaste the statement: "**this toothpaste is**

9

CLASS ACTION COMPLAINT

**magic** say hello to brush time magic with dragon dazzle toothpaste that tastes like adventure and glory."

24.    Defendant also touts the lack of potentially harmful ingredients in the Products (the "Safety Representations" and, collectively with the Kids' Representations, the "Representations"), including as follows:

- On the front label of the Products, Defendant uniformly represents that the Products contain "natural flavor";
- On the front box label, Defendant represents that the Products contain "no artificial sweeteners", "no dyes", "no SLS/sulfates", and are a "no brainer";
- On the side box label, Defendant lists the following things that are absent from the Products: "no artificial sweeteners", "no dyes", "no artificial flavors", "no preservatives", "no parabens", "no SLS/sulfates", "no gluten", and reiterates that the Products are a "no brainer";
- Defendant touts the ingredients in the Products with statements such as "thoughtfully formulated with natural flavor, sparkles, and high quality ingredients like xylitol and stevia" and that the Products prevent cavities, strengthen enamel, and work brilliantly;
- Adjacent to the Drug Facts panel, Defendant also includes statements that (i) the tubes are bpa-free and contain no phthalates, (ii) the Products contain globally sourced ingredients and are made in the USA; (iii) the Products are leaping bunny certified and never tested on animals; and (iv) the boxes are recyclable and printed with soy ink.

25.    These Representations are voluntary advertising statements.

26.    The Representations are not governed or required by any government or FDA regulation or requirement.

27.    Defendant voluntarily makes the Representations on the labels of the Products to appeal to consumers and to increase sales of the Products.

10

CLASS ACTION COMPLAINT

28. The Representations, individually and collectively, are misleading based on the lead contained in the Products.

**B. Scientific Testing Demonstrates that Defendant's Products Contain a Substantial Amount of Lead**

29. Plaintiffs' counsel commissioned scientific testing of Defendant's Products by an independent laboratory, which holds numerous accreditations, including ISO/IEC 17025:2017 and the FDA Laboratory Accreditation for Analysis of Foods (LAAF).

30. In April, August, and September of 2025, the laboratory conducted testing of the Products using Inductively Coupled Plasma – Mass Spectrometry ("ICP-MS").

31. ICP-MS is used to test for the presence of heavy metals, and the amount thereof.

32. ICP-MS is recognized for its high precision and sensitivity in measuring heavy metals, including lead.

33. ICP-MS is the approved methodology used by the FDA to test for the presence of heavy metals in food.[4]

34. The results of the scientific testing demonstrate that all of the Products, regardless of flavor or variety, contain a substantial amount of lead.

35. There is no specific FDA guidance or limit for lead in children's toothpaste.

36. The amount of lead in the Products, however, far exceeds relevant FDA guidance, which sets a limit of 100 ppb of lead that can be present in candy that is likely to be consumed frequently by small children.[5]

37. The independent scientific testing commissioned by Plaintiffs' counsel

---

[4] *See e.g.* https://www.fda.gov/food/environmental-contaminants-food/lead-food-and-foodwares#:~:text=In%20addition%2C%20the%20FDA%20has,parts%20per%20billi on%20(ppb) (linking to an Elemental Analysis Manual for Inductively Coupled Plasma-Mass Spectrometric Determination).

[5] *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-lead-candy-likely-be-consumed-frequently-small-children.

CLASS ACTION COMPLAINT

demonstrates that each variety of the Products contain lead, as follows:

| TOOTHPASTE TESTED | LEAD FOUND MICROGRAMS PER GRAM | LEAD FOUND PARTS PER BILLION | CONSERVATIVE FLOOR OF LEAD EXPOSURE PER DAY: .50 GRAM SERVING[6] |
|---|---|---|---|
| Wild strawberry fluoride toothpaste kids ages 2+ | .658 mcg/g | 658 ppb | .329 mcg/day |
| Unicorn sparkle fluoride toothpaste kids ages 2+ | .440 mcg/g | 440 ppb | .220 mcg/day |
| Dragon dazzle fluoride toothpaste kids ages 2+ | .411 mcg/g | 411 ppb | .206 mcg/day |
| Smiling shark fluoride free toothpaste kids all ages | .268 mcg/g | 268 ppb | .134 mcg/day |

---

[6] The directions for use on the Product labels instruct that children should brush "after each meal or at least twice a day," and while children under 6 are instructed to use a "pea-sized amount" (approximately 0.25 g); no limiting amount is specified for children older than 6. Studies and consumption data show that children and their caregivers rarely use only 0.25g per tooth-brushing occasion. Most use much more per occasion, including a "half load" or "full load," which some studies have estimated at approximately 1.4 g, or more (which does not take into account reloading during the tooth-brushing session, which is more likely for children). *See, e.g.,* https://www.cdc.gov/mmwr/volumes/68/wr/mm6804a3.htm (CDC study citing National Health and Nutrition Examination Survey  consumption data indicating that the vast majority of children began tooth-brushing at age ≥ 1 year; and a substantial majority of children ages 3-15 years used more than a pea-sized amount, with many using up to a "full load."). Even using a conservative value of .50 g, or .25 g twice per day, the Products expose children to a substantial amount of lead.

12

CLASS ACTION COMPLAINT

| Magical mermaid fluoride toothpaste kids ages 2+ | .245 mcg/g | 245 ppb | .123 mcg/day |
|---|---|---|---|
| Fresh watermelon fluoride free kids all ages | .236 mcg/g | 236 ppb | .118 mcg/day |

38.     In addition to the Products, Plaintiffs' counsel also commissioned the independent, scientific testing of other brands of children's toothpaste.

39.     Using the same testing methodology, the same FDA-accredited laboratory tested numerous other brands of toothpaste.

40.     In sharp contrast to the Product testing results—which found substantial amounts of lead in each tested Product—the testing of numerous other brands of children's toothpaste found insubstantial or undetectable levels of lead (with the limit of detection set at 0.001 ppm).[7]

41.     Defendant has the ability to manufacture kids' toothpaste that does not contain a substantial or detectible amount of lead.

42.     Defendant willfully or negligently manufactures the Products such that they contain a detectible, substantial amount of lead.

43.     Reasonable consumers of Defendant's Products do not want to purchase a children's toothpaste containing lead.

## C. The Lead in the Products is Harmful to Children

44.     Lead affects almost every organ and system in the body and accumulates in the body over time, leading to severe health risks and toxicity, including inhibiting neurological function and causing anemia, kidney damage, seizures, and in extreme

---

[7] For example, the testing of Himalaya Botanique Kids Cool Mint Toothpaste demonstrated that there was no detectible lead in the toothpaste; and the testing of BOKA Kids Strawberry Mango Toothpaste demonstrated that there were 35 ppb of lead.

13

CLASS ACTION COMPLAINT

cases, coma and death.[8]

45.    Lead is particularly detrimental to children.

46.    There is no safe blood level of lead for children. According to the Centers for Disease Control and Prevention ("CDC"), "[e]ven low levels cause harm."[9]

47.    Lead is a neurotoxin" and is particularly "dangerous for children" because "it affects kids' developing brains and nervous systems" and "[e]ven small amounts of lead exposure add up over time, increasing risk of developmental effects."[10]

48.    Furthermore, the lead in the Products is readily absorbed into the body because the Products are used to brush the teeth and gums in the mouth.

49.    Buccal mucosa, which line the cheeks and lips, and sublingual tissue, which is under the tongue, are highly absorptive.

50.    In one study examining various routes for administration of medication, the authors noted that, "[b]y applying the drug directly under the tongue (sublingual) or on the cheek (buccal), the medication undergoes a passive diffusion through the venous blood in the oral cavity, which bypasses the hepatic portal vein and flows into the superior vena cava."[11]

51.    Thus, unlike with oral administration, there is no "first-pass" metabolism of substances that are absorbed via the buccal or sublingual tissue. Accordingly, unlike with food products, where the food is metabolized and filtered by the liver, lead that is absorbed by tissue in the mouth bypasses the metabolic system and is able to directly

---

[8] Wani AL, et al., Lead toxicity: a review, INTERDISCIP TOXICOL. (June 2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4961898.

[9] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8553025/

[10] LEAD POISONING, C.S. Mott Children's Hospital, University of Michigan Health, https://www.mottchildren.org/posts/your-child/lead-poisoning

[11] Kim J, De Jesus O, Medication Routes of Administration, EUROPE PMC (March 2021), available at https://europepmc.org/article/NBK/nbk568677

14

CLASS ACTION COMPLAINT

enter the circulatory system.[12]

52.    In a recent study analyzing copper, zinc, arsenic, and lead content in toothpaste from India, the authors described the risks of toothpaste ingestion among younger children as well as the "high permeability of the oral mucosal tissue especially the sublingual and buccal mucosa [which] facilitates the subsequent absorption of metals following chronic exposure, thus elevating the risk of metal toxicity by toothpaste use."[13]

### D. Plaintiffs and Reasonable Consumers Are Misled and Suffer Injury

53.    The amount of lead in the Products is material to Plaintiffs and reasonable purchasers of children's toothpaste.

54.    Based on Defendant's Representations, Plaintiffs and reasonable consumers of Defendant's Products believe they are purchasing a premium children's toothpaste that is child-safe, and is free from potentially harmful elements and ingredients.

55.    Defendant intentionally makes the label Representations and intentionally fails to disclose the lead in the Products.

56.    The disclosure of lead in the Products would negatively impact Defendant's sales of the Products and its bottom line.

57.    If consumers knew that the Products contain lead, particularly in the amounts set forth herein, they would not purchase the Products.

58.    There are other children's toothpastes besides Defendant's Products available on the market, including toothpastes that do not contain a substantial or detectable amount of lead.

---

[12] *Id.*

[13] *See* S. Kavery Chengappa, et al. Analysis of copper, zinc, arsenic, and lead content of over-the-counter toothpastes from india: an invitro study (July, 2025), available at https://www.nature.com/articles/s41598-025-12748-3#:~:text=The%20risk%20of%20toothpaste%20ingestion,risk%20to%20organ%20syst ems16.

CLASS ACTION COMPLAINT

59. Consumers, however, are deprived of making the informed choice between Defendant's Products and other children's toothpaste products.

60. Plaintiffs and reasonable consumers suffered economic injury based on the purchase price of the Products.

61. If Plaintiffs had known the truth about Defendant's Products, they would not have purchased the Products.

62. Plaintiffs and Class members were harmed based on money spent to purchase the Products, which they otherwise would not have spent if they had known that the Products contain lead.

## IV. PARTIES

63. Plaintiff Nathan Barton is a citizen of California who purchased the fluoride free Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

64. Plaintiff Cynthia Fahrnkopf is a citizen of California who purchased the fluoride Products in this judicial district during the class period. Plaintiff's claim is typical of all Class members in this regard.

65. The advertising and labeling on the packages of the Products purchased by Plaintiffs, including the Representations, is typical of the advertising, labeling and representation of the Products purchased by members of the Class.

66. The price paid by Plaintiffs for the Products is typical of the price paid by members of the Class.

67. Defendant Colgate-Palmolive Company is a Delaware Corporation with its principal place of business in New York, New York.

68. Defendant and its agents manufacture, market, distribute, label, promote, advertise and sell the Products.

69. At all times material hereto, Defendant was conducting business in the United States, including in California, through its services as a manufacturer and supplier

CLASS ACTION COMPLAINT

to various stores in California and by, among other things, maintaining agents for the customary transaction of business in California.

70. Defendant and its agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.

71. The deceptive acts giving rise to Plaintiffs' claims occurred in this jurisdiction and in this judicial district.

72. The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products was prepared and/or approved by Defendant and its agents and was disseminated by Defendant and its agents through labeling and advertising containing the misrepresentations alleged herein.

**A. Plaintiffs Were Misled and Injured by Defendant's Misconduct**

***Plaintiff Nathan Barton***

73. Plaintiff Nathan Barton purchased the Products on numerous occasions during the Class Period, including in the fresh watermelon variety, which is fluoride free.

74. To the best of his recollection, Plaintiff purchased the Products from a Target store located in this judicial district and on amazon.com.

75. Most recently, Plaintiff purchased the fresh watermelon variety from amazon.com on May 28, 2025 and August 10, 2025 for $4.46 per purchase.

76. Plaintiff purchased the Products for family use and specifically for use by his minor child.

77. At the time of purchase, Plaintiff viewed the label box images, including the Representations.

78. At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

79. Acting reasonably under the circumstances, Plaintiff relied on the Representations and believed that the Products would be child-safe and free from potentially harmful ingredients or elements (such as lead).

17

CLASS ACTION COMPLAINT

80. Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

81. Defendant failed to disclose that the Products contain lead.

82. Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

83. Defendant continues to sell the misbranded Products.

84. Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

85. Plaintiff continues to suffer harm because he is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether he can purchase the Products in the future.

86. Unless Defendant is enjoined from continuing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been addressed and remedied.

87. Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

### *Plaintiff Cynthia Fahrnkopf*

88. Plaintiff Cynthia Fahrnkopf purchased the Products numerous times during the Class Period, including in the wild strawberry variety, which contains fluoride.

89. To the best of her recollection, Plaintiff purchased the Products numerous times per year from a Walmart store located in this judicial district.

90. To the best of her recollection, Plaintiff's most recent purchase was in 2024.

91. Plaintiff purchased the Products for family use and specifically for use by her minor child.

92. At the time of purchase, Plaintiff viewed the label box images, including the Representations.

93. At the time of purchase, Plaintiff did not know, and had no reason to know, that the Products contain lead.

18

CLASS ACTION COMPLAINT

94. Acting reasonably under the circumstances, Plaintiff relied on the Representations and believed that the Products would be child-safe and free from potentially harmful ingredients or elements (such as lead).

95. Unbeknownst to Plaintiff at the time of purchase, the Products contain lead.

96. Defendant failed to disclose that the Products contain lead.

97. Had Plaintiff known at the time of purchase that the Products contain lead, Plaintiff would not have purchased the Products.

98. Defendant continues to sell the misbranded Products.

99. Plaintiff would like to purchase the Products in the future if the Products did not contain lead.

100. Plaintiff continues to suffer harm because she is not able to rely on the labeling and advertising of the Products for their truth, and thus is unable to determine whether she can purchase the Products in the future.

101. Unless Defendant is enjoined from continuing to misrepresent the Products in the future, Plaintiff and consumers will not be able to reasonably determine whether the lead in the Products has been addressed and remedied.

102. Accordingly, Plaintiff's legal remedies are inadequate to prevent future injuries.

## V.    CLASS DEFINITION AND CLASS ALLEGATIONS

103. Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Products in the State of California and who do not claim any personal injury from using the Products (the "Class").

104. Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest;

(iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

105.    Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

106.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

107.    **Numerosity**:  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

108.    **Common Questions Predominate:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether Defendant's Representations are likely to mislead reasonable consumers;
- Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising, labeling and selling the Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*; Cal. Bus. & Prof. Code § 17500, *et seq.*; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;
- Whether Plaintiffs and the Class have sustained damage as a result of

CLASS ACTION COMPLAINT

Defendant's unlawful conduct; and

- The proper measure of damages sustained by Plaintiffs and the Class.

109. **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class they seek to represent because Plaintiffs, like the Class members, purchased Defendant's Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiffs' and Class member's claims arise from the same practices and course of conduct and are based on the same legal theories.

110. **Adequacy:** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the members of the Class Plaintiffs seek to represent. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

111. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, because individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

      a.     The common claims presented in this case predominate over any questions of law or fact, if any exists at all, affecting any individual member of the Class;

      b.     Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

CLASS ACTION COMPLAINT

    c.    Given the size of individual Class members' claims, few, if any, members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and members of the Class can seek redress for the harm caused to them by Defendant.

112. Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

113. The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

114. Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

/ / /

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

# CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Unfair and Unlawful Business Acts and Practices**
**(Business and Professions Code § 17200, *et seq*.)**
**(*for Plaintiffs and the Class*)**

115. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

116. Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

117. Plaintiffs bring this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

118. Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### *Defendant's Conduct Constitutes a Fraudulent Business Practice*

119. Defendant's conduct constitutes a fraudulent business practice because consumers are likely to be misled and deceived by Defendant's Representations.

120. Defendant was and is aware that its Representations are material to consumers.

121. Defendant was and is aware that its Representations are misleading, as described herein.

122. Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

23

CLASS ACTION COMPLAINT

123.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

### *Defendant's Conduct Constitutes an Unfair Business Practice*

124.    Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

125.    Defendant's conduct violates the Immoral Test because Defendant intentionally makes the Representations to increase sales of the Products.

126.    Defendant was and is aware that its Representations are misleading, as described herein.

127.    Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's Representations.

128.    Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the Representations is outweighed by the harm to consumers.

129.    As set forth herein, the Representations are optional, voluntary advertising statements.

130.    Defendant makes the Representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

131.    Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

132.    Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions between Defendant's Products, which contain a substantial amount of lead, and other comparable Products that contain an insignificant or undetectable amount of lead.

133.    In addition, Defendant's conduct is also injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not

24

CLASS ACTION COMPLAINT

misrepresented.

134.   Defendant had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in its practices related to the labeling and advertising of the Products.

135.   There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

136.   Plaintiffs and members of the Class could not have reasonably avoided injury. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were misleading.

137.   Plaintiffs purchased the Products with the reasonable belief that the Products were safe for children, did not contain harmful elements or ingredients, and without knowledge that the Products in fact contain lead.

### Defendant's Conduct Constitutes an Unlawful Business Act

138.   Defendant's misrepresentation of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[14]

139.   Defendant's conduct in making the Representations described herein, in the absence of any lead disclosure, constitutes a knowing failure to adopt policies in

---

[14] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

CLASS ACTION COMPLAINT

accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

140.   This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

141.   Plaintiffs and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Class members.

142.   As a result of the business acts and practices described above, Plaintiffs and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

143.   Pursuant to Civil Code § 3287(a), Plaintiffs and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the Class are entitled to interest in an amount according to proof.

### No Adequate Remedy at Law

144.   Plaintiffs' legal remedy is inadequate.

145.   Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

146.   In addition, Plaintiffs' request for equitable relief goes beyond Plaintiffs' request for legal damages.

147.   Disgorgement is based on Defendant's gain, rather than Plaintiffs' loss.

148.   Additionally, as a measure of Defendant's unjust enrichment or ill-gotten

26

CLASS ACTION COMPLAINT

gains, disgorgement permits recovery of interest.

149. Disgorgement can be readily measured as a sum certain according to Defendant's financial records, while legal damages are generally subject to complex and costly expert valuation.

150. Finally, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

151. As a result of the business acts and practices described above, pursuant to § 17203, Plaintiffs and members of the Class are entitled to an order enjoining such future wrongful conduct on the part of Defendant.

152. As set forth herein, Plaintiffs' remedy at law is inadequate to allow Plaintiffs to determine whether the labeling and advertising of the Products has been remediated and thus whether they can purchase the Products in the future.

### SECOND CAUSE OF ACTION
### Deceptive Advertising Practices
### (California Business & Professions Code §§ 17500, *et seq.*)
### (*for Plaintiffs and the Class*)

153. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

154. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

155. Defendant violated § 17500 by making the Representations and failing to disclose that the Products contain lead; and by representing that the Products possess characteristics and value that they do not have.

156. Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiffs to purchase the Products.

157. Defendant's uniform Representations were likely to deceive, and

27

CLASS ACTION COMPLAINT

Defendant knew or should have known that they were misleading.

158. Plaintiffs purchased the Products in reliance on the Product labeling, including that the Product labeling was accurate as alleged herein, and without knowledge of Defendant's misrepresentations.

159. Plaintiffs and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Class members.

160. The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

161. In making the Representations alleged herein, Defendant knew or should have known that the Representations were deceptive and/or misleading, and violate § 17500.

162. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500 Plaintiffs and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

### No Adequate Remedy at Law

163. Plaintiffs' legal remedy is inadequate.

164. Disgorgement serves to make illegal conduct unprofitable. Thus, disgorgement uniquely serves as a deterrent for future, unlawful conduct by Defendant.

165. In addition, Plaintiffs' request for equitable relief goes beyond Plaintiffs' request for legal damages.

166. Disgorgement is based on Defendant's gain, rather than Plaintiffs' loss.

167. Additionally, as a measure of Defendant's unjust enrichment or ill-gotten

CLASS ACTION COMPLAINT

gains, disgorgement permits recovery of interest.

168. Disgorgement can be readily measured as a sum certain according to Defendant's financial records, while legal damages are generally subject to complex and costly expert valuation.

169. Finally, the reach of equitable relief may extend beyond that of legal damages. While legal damages under the CLRA are limited by statute (*e.g.*, to persons who purchase for personal, family or household purposes) equitable relief under the UCL is not statutorily limited.

170. As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiffs and members of the Class request an Order pursuant to § 17535 enjoining such future wrongful conduct on the part of Defendant.

171. As set forth herein, Plaintiffs' remedy at law is inadequate to allow Plaintiffs to determine whether the labeling and advertising of the Products has been remediated and thus whether they can purchase the Products in the future.

**THIRD CAUSE OF ACTION**
**Consumer Legal Remedies Act**
**(Cal. Civ. Code § 1750, *et seq*.)**
**(*for Plaintiffs and the Class*)**

172. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

173. Plaintiffs bring this action pursuant to California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA").

174. The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

175. The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

176. Defendant is a "person," as defined by the CLRA in California Civil Code

CLASS ACTION COMPLAINT

§1761(c).

177. Plaintiffs and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

178. Purchase of the Products by Plaintiffs and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

179. Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the Representations, as described herein.

180. Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the Representations, as described herein.

181. In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

182. Defendant's uniform Representations regarding the Products were likely to deceive, and Defendant knew or should have known that its Representations were deceptive and/or misleading.

183. Plaintiffs and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

184. Plaintiffs and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, including that the Products contain lead.

185. Plaintiffs and members of the Class would not have purchased the Products had they known the truth about the lead in the Products.

186. Plaintiffs and members of the Class have been directly and proximately injured by Defendant's conduct.

187. Such injury includes, but is not limited to, the purchase price of the Products

CLASS ACTION COMPLAINT

and/or the price of the Products at which they were offered.

188.  Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

189.  Pursuant to California Civil Code § 1782(a), on May 30, 2025, Plaintiffs' counsel, on behalf of another consumer and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiffs' claims. (the "Notice Letter").

190.  The Notice Letter set forth in detail the claims alleged herein, including the results of the independent scientific testing for certain varieties of Defendant's Products and the allegations that Defendant's label Representations are misleading to reasonable consumers.

191.  Despite giving Defendant far more than 30-days from the date of the Notice Letter to provide appropriate relief for violations of the CLRA, Defendant failed to provide any such relief. As such, Plaintiffs seek compensatory, monetary and punitive damages, and request that this Court enter such Orders or judgments as may be necessary to restore to any person in interest any money which may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

192.  As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiffs and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

## **PRAYER**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

31

CLASS ACTION COMPLAINT

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Class; and naming Plaintiffs' attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory and monetary damages to Plaintiffs and the Class;

D.    For an order awarding injunctive relief;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding pre-and post-judgment interest; and

G.    For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 22, 2025

Respectfully submitted,

**KAMBERLAW, LLP**

By: */s/ Naomi B. Spector*
NAOMI B. SPECTOR (SBN 222573)
3451 Via Montebello, Ste.192-212
Carlsbad, CA 92009
Phone: 310.400.1053
Fax: 212.202.6364
Email: nspector@kamberlaw.com

32

CLASS ACTION COMPLAINT